UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE VILLAGE OF PIERMONT,

                Plaintiff,

       - against -

AMERICAN ALTERNATIVE INSURANCE
CORPORATION,

                Defendant.

**OPINION AND ORDER**

14 Civ. 5172 (ER)

Ramos, D.J.:

       The Village of Piermont (the "Village") brings this action against American Alternative Insurance Corporation ("AAIC"), seeking a declaratory judgment that AAIC is obligated to provide a defense to Michael Bettman, Danny Goswick, Jr., and Sam Kropp (the "Individual Defendants") in the lawsuit *Bernstein v. Village of Piermont*, 11 Civ. 3677 (ER) (the "Underlying Action"), and is required to reimburse the Village for the expenses it has incurred in providing a defense to the Individual Defendants thus far.  The Village claims that AAIC is obligated to defend the Individual Defendants under a Portfolio Policy of insurance issued to the Village (the "Policy"), while AAIC maintains that no such defense is required under the terms of the Policy.  The parties have cross-moved for summary judgment (Doc. 27, 34).  For the reasons stated herein, the Village's motion is GRANTED and AAIC's motion is DENIED.

I. BACKGROUND

A. The Underlying Action

To determine whether AAIC has a duty to defend the Individual Defendants, it is necessary to examine the allegations in the Underlying Action.[1]

On May 31, 2011, Mark Bernstein, individually and as parent of A.B., a minor, commenced a lawsuit against the Village and the Individual Defendants in this Court.[2] *See* Complaint, 11 Civ. 3677 (ER) (Doc. 1). Bernstein filed an Amended Complaint (the "Complaint") on June 10, 2011. *See* Amended Complaint ("Compl."), 11 Civ. 3677 (ER) (Doc. 2). The Complaint alleges a civil rights claim pursuant to 42 U.S.C. Section 1983 against the Village and, jointly and severally, the Individual Defendants. *Id.* ¶ 1. Specifically, Bernstein alleges that his son, A.B., was made "physically and psychologically ill" when the Individual Defendants physically restrained A.B and forced him to engage in acts of sodomy as part of a hazing ritual when A.B. joined the Village Fire Department (the "Department"). *Id.* ¶¶ 5, 13, 17. Bernstein further alleges that in the process of hazing A.B., the Individual Defendants falsely imprisoned him. *Id.* ¶ 25.

According to Bernstein, the Village condoned the hazing, and deemed it to be "a prerequisite in acceptance into [the Department]." *Id.* ¶ 6. For example, each of the Individual Defendants is alleged to have undergone similar hazing when they joined the Department. *Id.* Furthermore, the hazing is alleged to have been "undertaken in furtherance of [the Individual Defendants'] positions as volunteer firefighters . . . and pursuant to an accepted policy of [the

---

[1] The Court makes no findings regarding the truth of the allegations in the Underlying Action.

[2] AAIC's obligation to provide a defense to the Village in the Underlying Action is not in dispute. AAIC has provided the Village with a defense in the Underlying Action, as well as in the related case *Bernstein v. Village of Piermont*, 12 Civ. 2062 (ER), in accordance with the Policy. *See* Declaration of Phyllis A. Ingram in Support of Plaintiff's Motion for Summary Judgment (Doc. 28) Ex. K; Plaintiff's Local Civil Rule 56.1 Statement of Material Facts Not in Dispute (Doc. 29) ¶ 28.

Department] and thus within the scope of their duties and authority." *Id.* ¶ 7.  The Village is alleged to have "promulgated, fostered and implemented [this] policy." *Id.* ¶ 5.

On July 17, 2015, this Court stayed discovery in the Underlying Action pending resolution of this declaratory judgment action.  Hearing Transcript at 18:20-19:0, 11 Civ. 3677 (ER) (Doc. 129).

**B. The Insurance Policy**

The Policy is identified as VFIS-TR-2064005-01/000 and covered the period from July 9, 2010 to July 9, 2011.  Ex. G[3] at 1.  The Policy names as its insured the Village of Piermont, the Village of Piermont Fire Department, Empire Hose Company #1, and the Village of Piermont Underwater Rescue Team.  *Id.* at 6.  The Policy includes two types of coverage implicated here: a General Liability Forms and Endorsements (the "GL Coverage") and a Management Liability Forms and Endorsements (the "ML Coverage").[4]  *Id.* at 3-4.

<u>1. The ML Coverage</u>

In addition to the named insureds, The ML Coverage includes as insureds "volunteers and employees . . . but only for acts within the course and scope of their employment by [the named insured] or authorized duties on [the named insured's] behalf."  Ex. H ("ML") at 6-7.  The ML Coverage provides for a defense against any suit seeking damages arising out of three types of offenses, two of which the Village argues are implicated here:  an "employment practices" offense or a "wrongful act."  *Id.* at 1.

---

[3] All "Ex." references are to exhibits attached to the Declaration of Phyllis A. Ingram in Support of Plaintiff's Motion for Summary Judgment (Doc. 28).

[4] AAIC also issued the Village a Commercial Umbrella Policy (the "Umbrella Policy"), identified as VFIS-CU-5057419-01/000.  *See* Ex. J.  The Umbrella Policy provides sums in excess of the amount payable under the terms of the underlying policies for indemnification.  *Id.* at CU1000B-1, -2.  On October 21, 2013, this Court issued an Order finding, *inter alia*, that the question of indemnification coverage under the Policy is not ripe for review.  Order at 6, 11 Civ. 3677 (ER) (Doc. 61).

The ML Coverage defines "employment practices" as "an actual or alleged improper employment related practice, policy, act or omission involving an actual, prospective, or former volunteer or employee, including: . . . 'sexual harassment.'" *Id.* at 12.

"Sexual harassment" is further defined in the policy as:

> [A]ny actual, attempted or alleged unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature by a person, or by persons acting in concert, which causes injury. 'Sexual Harassment' includes: a. The above conduct when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person; or b. The above conduct when such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile or offensive work environment.

*Id.* at 13.

The ML Coverage defines a "wrongful act" as:

> [A]ny actual or alleged error, act, omission, misstatement, misleading statement, neglect or breaches of duty committed by you or on behalf of you in the performance of your operations, including misfeasance, malfeasance, or nonfeasance in the discharge of duties, individually or collectively that results directly but unexpectedly and unintentionally in damages to others.

*Id.*

The ML Coverage specifies that the insurer will have the duty to defend any suit seeking damages for either of these offenses "even if the allegations of the 'suit' are groundless, false or fraudulent." *Id.* at VMLNY1-1.

The ML Coverage also contains a number of exclusions, one of which is for "sexual abuse." *Id.* at 13. "Sexual abuse" is defined as: "any actual, attempted or alleged sexual conduct by a person, or by persons acting in concert, which causes injury. 'Sexual abuse' includes sexual molestation, sexual assault, sexual exploitation or sexual injury, but does not include 'sexual harassment.'" *Id.*

4

2. The GL Coverage

The GL Coverage also includes "volunteers and employees" as insureds, but like the ML Coverage, only for "acts within the course and scope of their employment by [the named insured], membership with [the named insured] or authorized duties on [the named insured's] behalf." Ex. I ("GL") at 10.  The GL Coverage contains four types of coverage, two of which the Village argues are implicated here:  GL Coverage A and GL Coverage B.  *Id.* at 1, 5.

GL Coverage A covers a defense against any suit seeking damages for "bodily injury" (defined as "bodily injury, sickness or disease sustained by a person") that is caused by an "occurrence" (defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions").  *Id.* at 1, 15, 17.

GL Coverage B covers a defense against any suit seeking damages for a "'personal and advertising' injury caused by an offense arising out of [the named insured's] business but only if the offense was committed in the 'coverage territory' during the policy period."  *Id.* at 5. "Personal and advertising injury" is defined as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:  . . . False arrest, detention or imprisonment."  *Id.* at 17.  "Bodily injury" under this coverage is defined in the same manner as under GL Coverage A.  *Id.* at 15.

The GL Coverage, also like the ML Coverage, specifies that that the insurer will have the duty to defend any suit seeking damages covered by Coverage A or Coverage B "even if the allegations of the 'suit' are groundless, false, or fraudulent."  *Id.* at VGLNY1-1, -3.

Both GL Coverage A and GL Coverage B contain a number of exclusions, including for "sexual abuse" and "sexual harassment," both of which are defined in the same manner as under the ML Coverage.  *Id.* at 19.

5

**C. AAIC's Denial of Coverage**

On September 30, 2011, AAIC sent each of the Individual Defendants a letter stating that it had determined that it had no obligation to defend them in the Underlying Action pursuant to any of the Policy's coverages.  *See* Exs. L, M, N.

With regard to the ML Coverage, AAIC gave three reasons for disclaiming its duty to defend:  (1) none of the Individual Defendants qualify as an "insured," because their conduct was not "within the course and scope of [their] employment, membership or authorized duties for the Village/Fire Department"; (2) the alleged acts fall under the coverage's "sexual abuse" exclusion; and (3) the alleged acts are not covered by the coverage's "wrongful act" definition, because they "could be expected and intended to result in damages."  *Id.* at 4.

With regard to the GL Coverage, AAIC gave four reasons for disclaiming its duty to defend:  (1) none of the Individual Defendants qualify as an "insured"; (2) the alleged acts fall under the coverage's "employment practices" exclusion; (3) the alleged acts fall under the coverage's "sexual abuse" exclusion; and (4) the plaintiff in the Underlying Action is not seeking damages for "bodily injury" or "property damage" caused by an "occurrence," (as required under GL Coverage A), nor is plaintiff seeking damages for "personal and advertising injury" caused by an offense arising out of the business of the named insured (as required under GL Coverage B).  *Id.* at 5.

**D. The Village Provides a Defense**

On October 21, 2013, this Court issued an Order directing the Village to provide separate defense counsel to each of the Individual Defendants pursuant to Chapter 10 of the Village Code of the Village of Piermont.  Order at 9, 11 Civ. 3677 (ER) (Doc. 61).  Chapter 10 is an ordinance, in effect when the Policy was executed, which states:

> [The] Village shall provide for the defense of an employee in any civil action or proceeding in any court or administrative action arising out of any alleged act or omission which occurred or is alleged to have occurred while the employee was acting or in good faith purporting to act within the scope of his public employment or duties or which is brought to enforce a provision of Sections 1981 through 1988 of Title 42 of the United States Code . . . .

Ex. P at 1.  Employee is defined in the code as "any person holding a position by election, appointment or employment in the service of the Village of Piermont, whether or not compensated . . . ." *Id.*

As of March 4, 2015, the Village has paid $109,665.77 in legal fees to the Individual Defendants for defense counsel.  *See* Declaration of Phyllis A. Ingram in Opposition to Defendant's Cross-Motion for Summary Judgment (Doc. 43) Ex. B ¶ 8.

**E. Procedural History**

On July 11, 2014, the Village filed a complaint in this Court, seeking a declaratory judgment that AAIC is obligated to provide a defense to the Individual Defendants in the Underlying Action.  Doc. 2 ¶ 63.  The complaint included the Village, as well as each of the Individual Defendants, as named plaintiffs.  *See id.* ¶¶ 6, 7, 8.

On December 5, 2014, each of the three Individual Defendants sent Magistrate Judge Frank Maas a letter indicating that they had not consented to being named plaintiffs in the declaratory judgment action, and that because the Village was providing them with a defense, there was no case or controversy between the Individual Defendants and AAIC.  *See* Declaration of Terence S. Hannigan in Support of Defendant's Cross Motion for Summary Judgment ("Hannigan Decl.") (Doc. 37) Exs. A, B, C.

During a conference held on December 11, 2014, Judge Maas noted that indeed the Individual Defendants "are not named insureds under the Village's policy," Doc. 40 at 4:12, and

"could care less whether the village pays or AAIC pays [for their defense]," *id*. at 4:19-20. Judge Maas agreed that the "the real party in interest . . . is the Village," *id.* at 5:8-9 and concluded that the case "could have been brought on behalf of the village without naming the three individual plaintiffs," *id.* at 5:11-13. Accordingly, on December 12, 2014, Judge Maas issued an Order directing counsel for the Village to file an amended complaint. Doc. 20. On January 8, 2015, the Village filed an amended complaint, naming only itself as plaintiff. Doc. 22. The Village also requested, as further relief, that AAIC be required to reimburse the Village for the expenses it has incurred in providing a defense to the Individual Defendants thus far. *Id.* ¶ 58.

On May 7, 2015, the Village moved for summary judgment, Doc. 27, and on May 26, 2015, AAIC cross-moved for summary judgment, Doc. 34.

## II. STANDING

AAIC, in its cross motion, challenges the Village's standing to bring this declaratory judgment action. "Constitutional standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Leibovitz v. New York City Transit Auth.,* 252 F.3d 179, 184 (2d Cir. 2001) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). In order to show standing under Article III of the U.S. Constitution, a plaintiff has the burden of showing: (1) "injury in fact"; (2) a causal relationship between the injury and the challenged conduct; and (3) "it is likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). At the summary judgment stage, the plaintiff can no longer rest on mere allegations, as would be appropriate at the pleading stage, but must set forth with evidence "'specific facts' which for

purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 560 (citing Fed. R. Civ. P. 56(e)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (same).

The Village alleges that AAIC had an obligation under an insurance policy to provide a defense to the Individual Defendants, but that AAIC disclaimed its obligation in breach of the policy. As a result, the Village experienced financial loss in providing a defense to the Individual Defendants as it was required to do pursuant to a local ordinance.

The Court finds that the Village has provided sufficient evidence to support these allegations: the Policy issued by AAIC to the Village states that AAIC shall provide a defense to the Village and the Department against certain claims, and that this coverage shall also be provided to their "volunteers and employees"; AAIC sent letters to the Individual Defendants disclaiming their coverage in the Underlying Action; and the Village has incurred $109,665.77 as of March 4, 2015 as a result of having to provide a defense to each of the Individual Defendants, in accordance with Chapter 10 of the Village Code.

Taking these facts as true, as well as the Village's allegation that AAIC's refusal to provide a defense to the Individual Defendants was in breach of the Policy, the Court finds that the Village clearly has standing in this case. The Village has: (1) suffered an injury in fact (financial loss) that (2) can be traced directly to AAIC's conduct (breach of the Policy), which (3) would be redressed by a declaratory judgment by this Court that AAIC must defend the Individual Defendants and reimburse the Village for the costs it has incurred as a result of AAIC's breach.

AAIC makes a number of arguments challenging the Village's standing in this case. First, AAIC relies heavily upon *City of New Haven v. Insurance Co. of Pennsylvania*, 2012 WL

774987, 10 Civ. 2047 (JCH) (D. Conn. Mar. 8, 2012), *aff'd*, 510 F. App'x 70 (2d Cir. 2013) to claim that the Village is barred from bringing this action. In *City of New Haven* an insurance coverage dispute arose out of an automobile accident between two police officers responding to the same emergency call. *Id.* at *1. The officers' vehicles collided at an intersection, causing injury to one and death to the other. *Id.* The injured officer and the dead officer's estate commenced suit against each other and against the City of New Haven. *Id.*

New Haven, as a primary self-insurer, sought indemnification from its excess insurance carrier for its liability in the action. *Id.* at *2. However, New Haven's claim was subject to two exclusions under the excess policy, precluding coverage for the City. *Id.* at *1-2. Nonetheless, New Haven contended that because the officers (to which the exclusions did not apply) were additional insureds under the Policy, and could claim coverage in their own right, New Haven was entitled to bring a claim "on their behalf." *Id.* at *3. The District Court found, however, that New Haven could not "assert that the Policy covers the [officers] on their behalf in this action when neither is a party here." *Id.* at *4.

AAIC attempts to draw from this language an analogous conclusion: that the Village cannot claim that the Policy covers the defense of the Individual Defendants "on their behalf" when neither is a party here. *See* Memorandum of Law in Support of the Cross Motion for Summary Judgment of Defendant American Alternative Insurance Corporation ("Def. Br.") (Doc. 35) at 6. However, the reasoning of *City of New Haven* cannot be stretched to cover the facts of this case.

As AAIC correctly points out, there is a "general prohibition on a litigant's raising another person's legal rights." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (internal citation omitted); Def. Br. at 2. In *City of New Haven*, the legal right

10

to bring a claim under the excess policy belonged to the officers, not to New Haven. In bringing the action on the officers' behalf, New Haven effectively sought to get around the exclusions that precluded coverage for its liability. The district court explained that "New Haven . . . cannot rely on the claimed status of the [officers] as insureds under the Policy" to obtain coverage for itself. *Id.* at *3; *see also id.* at *4 ("[I]f the Policy covers New Haven's liability arising out of the accident at all, it does so solely based on New Haven's *own* claims for coverage under the Policy.") (emphasis added).

Here, by contrast, the Village is not making a claim "on behalf of" – let alone a claim that belongs exclusively to – the Individual Defendants. Rather, the Village as the named insured under the Policy has specifically alleged that "AAIC has breached its contracts of insurance *with Piermont* in violation of the terms of the aforesaid policies."[5] Doc. 22 ¶ 52 (emphasis added). AAIC provides no explanation for why the Village cannot raise this claim. Rather, AAIC erroneously attempts to shoehorn the Village's claim under the authority of *City of New Haven*.

AAIC also argues that because the Village passed Chapter 10 – requiring it to defend its employees in any Section 1983 action – by its own volition, AAIC cannot be blamed for the Village's self-imposed obligation to provide the Individual Defendants with a defense. Def. Br. at 7. AAIC further asserts that a declaratory judgment by this Court would not redress the Village's injury, because the Village's obligation to defend the Individual Defendants pursuant to Chapter 10 would remain. *Id.* at 9-10.

However, AAIC fails to recognize that the issue of who must ultimately bear the cost of the Individual Defendants' defense is separate from the Village's obligation to provide that

---

[5] Indeed, it is for this reason that Magistrate Judge Maas found that "the real party in interest . . . is the Village," Doc. 40 at 5:8-9, and that "it seems to me this case could have been brought on behalf of the village without naming the three individual plaintiffs," *id.* at 5:11-13.

defense in the first instance.[6]  AAIC's focus on the Village's obligation to provide a defense is therefore misplaced, because it has no bearing on the Village's allegation that AAIC's failure to pay for that defense has caused the Village financial loss.[7]  Correspondingly, the Village's injury would be redressed by a declaratory judgment finding that AAIC must pay for the Individual Defendants' defense and reimburse the Village for the costs it has incurred.

For these reasons, the Court finds that the Village has standing to bring this declaratory judgment action.

## III. DISCUSSION

### A. Standard of Review

Summary judgment may be granted when it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (same).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

Here, the Parties agree that there are no issues of material fact.  Instead, they dispute the legal meaning of the Policy's coverage.  Where the sole question presented on a motion for

---

[6] Section 10-4(D) of the Village Code explicitly states that the Village's obligation to provide a defense shall not be construed to affect the obligations of an insurer under a policy for insurance.  *See* Ex. P at 3 ("The provisions of this chapter shall not be construed to impair, alter, limit or modify the rights and obligations of any insurer under any policy of insurance.").

[7] In fact, the Village contends that the very purpose of the Policy was to provide coverage for the Village's obligation to defend its employees under Chapter 10.  *See* Memorandum of Law in Opposition to Defendant's Cross-Motion for Summary Judgment (Doc. 44) at 9-11.  That Chapter 10 was in effect at the time that the Policy was executed supports this contention.  *See* Ex. P at 1.

summary judgment is the interpretation of a clear and unambiguous contract, the issue is one of law that may be decided by the Court upon a motion for summary judgment. *See Fed. Ins. Co. v. Zurich Am. Ins. Co.*, 445 F. App'x 405, 408 (2d Cir. 2011); *see also Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 775 F. Supp. 606, 609 (S.D.N.Y. 1991) (same).

**B. Duty to Defend**

The parties do not dispute that New York law applies. In New York, "an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person." *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985).

Therefore, to determine if a defense obligation exists, the Court must determine whether the allegations, "liberally construed," are "within the embrace of the policy." *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006) (citing *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8-9 (1985)). If any allegations "fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be," an insurer must defend. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 306 (1984). This means that "[t]he insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, 95 Civ. 4845 (RPP), 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) (citing *Seaboard*, 64 N.Y.2d at 310-11). Furthermore, "[t]he duty [to defend] remains 'even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered.'" *Auto. Ins.*

*Co. of Hartford*, 7 N.Y.3d at 137 (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991)).

Conversely, "a defense obligation may be avoided only where there is 'no possible factual or legal basis' on which an insurer's duty to indemnify under any provision of the policy could be held to attach." *Century 21*, 442 F.3d at 82-83 (quoting *Servidone*, 64 N.Y.2d at 424). When an exclusion clause is relied upon to deny coverage, "the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002). The insurer must "demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions." *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137 (citing *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 159 (1992)).

**C. Coverage under the Policy**

In order to determine whether the defense of the Individual Defendants is covered by the Policy, the Court must determine for each type of coverage: (1) are the Individual Defendants insureds, as defined in the policy; (2) are the acts that they are alleged to have committed covered by the policy; and (3) do any of the policy's exclusions bar coverage. Upon review of the allegations in the Complaint and the terms of the Policy, the Court finds that the Individual Defendants are owed a defense under both the ML Coverage and the GL Coverage.

    1. The ML Coverage

        *a. Whether the Individual Defendants are insured*

The ML Coverage states that "volunteers and employees" are insured, but "only for acts within the course and scope of their employment by [the named insured] or authorized duties on [the named insured's] behalf." ML at 7. Bernstein alleges in the Underlying Action that the

hazing ritual "was undertaken *in furtherance of [the Individual Defendants'] positions* as volunteer firefighters . . . and pursuant to an accepted policy of [the Department] and thus *within the scope of their duties and authority*." Compl. ¶ 7 (emphasis added).

Comparing the policy language with the allegations, the Individual Defendants are clearly insured under the policy's definition. The allegations explicitly set forth that they acted "within the scope of their duties and authority" as volunteers, thus coming within the policy's definition of an insured.

AAIC argues, however, that "[i]t is obvious that the complained of conduct by [the Individual Defendants] was not done within the scope or in furtherance of authorized firematic duties on behalf of the Village under any interpretation." Def. Br. at 12. AAIC also points to an affidavit by Fire Chief Kevin Fagan, which states that "the acts alleged in the complaint relating to hazing of members is [sic] not considered part of the course and scope of the duties of volunteer firemen," and that "such behavior would be outside the scope of any volunteer fireman." Hannigan Decl. Ex. E ¶¶ 2-3.

However, Chief Fagan's and AAIC's interpretations of the allegations are immaterial. Under New York law, it does not matter "how false or groundless those allegations might be." *Seaboard,* 64 N.Y.2d at 310. The policy expressly provides that AAIC has a duty to defend "even if the allegations of the 'suit' are groundless, false, or fraudulent." Thus it is inconsequential whether "facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Fitzpatrick*, 78 N.Y.2d at 62; *see also Int'l Bus. Machs. Corp. v. Liberty Mutual Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002) (same).

Because the allegations against the Individual Defendants are indisputably "within the embrace" of the policy's definition of an "insured," the Court finds that the Individual Defendants are insured under the ML Coverage.

### b. Whether the Individual Defendants' alleged acts are covered

The ML Coverage states that AAIC "will pay those sums that the insured becomes legally obligated to pay as monetary damages arising out of an 'employment practices' offense . . . to which this insurance applies."  ML at 1.

The policy defines "employment practices" as an "actual or alleged improper employment related practice [or] policy . . . including . . . 'sexual harassment.'"  *Id.* at 12.  The policy further defines "sexual harassment," in pertinent part, as:

> [A]ny . . . alleged unwelcome sexual advances, requests for sexual favors, *or other conduct of a sexual nature by a person*, or by persons acting in concert, which causes injury.  'Sexual Harassment' includes . . . [t]he above conduct when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment . . . .

*Id.* at 13 (emphasis added).

Bernstein alleges in the Underlying Action that the acts of the Individual Defendants were undertaken "pursuant to an *accepted policy* of [the Department]," Compl. ¶ 7 (emphasis added), which was "promulgated, fostered and implemented" by the Village, *id.* ¶ 5. Furthermore, the acts of the Individual Defendants, including "forcibly causing [A.B.] to engage in acts of sodomy," *id.* ¶ 13, are alleged to have been "*a pre-requisite in acceptance into [the Department]*," *id.* ¶ 6 (emphasis added).  Thus Bernstein has alleged that the Village maintained an "improper employment related practice [or] policy," constituting "sexual harassment," which served as a condition of A.B.'s acceptance, and thus "future employment," with the Department.

These allegations are sufficient to qualify as "sexual harassment" within the policy's definition of "employment practices."

### c. Whether any exclusions bar coverage

AAIC claims that the alleged acts fall under the ML Coverage's "sexual abuse" exclusion, and are therefore barred from coverage. "Sexual abuse" is defined in the Policy as "any actual, attempted or alleged sexual conduct by a person, or by persons acting in concert, which causes injury." ML at 13. This includes "sexual molestation, sexual assault, sexual exploitation or sexual injury, but does not include 'sexual harassment.'" *Id.*

AAIC argues that "[t]here can be no dispute that conduct constituting 'sexual abuse' is alleged in the Complaint in the underlying action." Def. Br. at 14. AAIC fails to recognize, however, that whether any conduct constituting sexual abuse is alleged in the Complaint does not bear on whether a defense is owed. "The insurer's duty to defend the entire action is triggered even if *only one claim* is potentially covered by the insurance policy." *Mass. Bay Ins. Co.*, 1996 WL 389266, at *4 (citing *Seaboard*, 64 N.Y.2d at 310-11) (emphasis added). Furthermore, "a defense obligation may be avoided only where there is no possible factual or legal basis on which an insurer's duty to indemnify under *any provision of the policy* could be held to attach." *Century 21,* 442 F.3d at 82-83 (emphasis added) (internal quotation marks omitted).

Thus, it is immaterial whether some of the acts alleged fall under the sexual abuse exclusion. AAIC must demonstrate that the allegations fit "solely and entirely" within the sexual abuse exclusion. As described above, there is a reasonable possibility that AAIC will have a duty to indemnify under the "sexual harassment" provision of the policy because the acts alleged may also plainly constitute "unwelcome sexual advances, requests for sexual favors, or conduct of a sexual nature." Therefore, AAIC has failed to demonstrate that there is "no possible factual

or legal basis" on which the duty to indemnify under "any provision of the policy" could be held to attach.  Because some of the allegations in the Underlying Action can be reasonably read to fall within the scope of the Policy's "sexual harassment" definition, and because "sexual harassment" is explicitly carved out of the "sexual abuse" exclusion, the Court finds that the sexual abuse exclusion does not bar coverage of the Individual Defendants' defense.

For these reasons, the Court finds that AAIC is required to provide the Individual Defendants with a defense in the Underlying Action pursuant to the "employment acts" offenses provision of the ML Coverage.[8]

### 2. The GL Coverage

#### a. Whether the Individual Defendants are insured

The Individual Defendants meet the definition of an "insured," under the GL Coverage for the same reasons they do under the ML Coverage.  Under the GL Coverage, volunteers and employees are similarly covered for "acts within the course and scope of their employment by [the named insured], membership with [the named insured] or authorized duties on [the named insured's] behalf."  GL at 10.  Because the Complaint in the Underlying Action alleges that the Individual Defendants acted "pursuant to an accepted policy of [the Department] and thus within the scope of their duties and authority," Compl. ¶ 7, they meet the definition of an "insured" under the GL Coverage.

#### b. Whether the Individual Defendants' alleged acts are covered

GL Coverage B states that AAIC will owe a defense against any suit seeking damages for a "'personal and advertising' injury caused by an offense arising out of [the named insured's]

---

[8] The Village argues that AAIC also has a duty to defend the Individual Defendants under the "wrongful act" provision of the ML Coverage.  Because the Individual Defendants qualify for a defense under the "employment acts" provision, the Court does not reach this issue.

business but only if the offense was committed in the 'coverage territory' during the policy period." GL at 5.  Personal and advertising injury is defined as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . False arrest, detention or imprisonment." *Id.* at 17.

Bernstein alleges in the Underlying Action that A.B. was "falsely imprisoned" by the Individual Defendants, Compl. ¶ 25, and that as a result, AB became "physically and psychologically ill," *id.* ¶ 17.  The allegations therefore indicate that A.B. suffered a "personal and advertising injury."  Furthermore, A.B.'s injury is alleged to have been caused by the Individual Defendants acting within the scope of their duties, indicating that the advertising injury arose out of the Department's business.  Comparing the allegations in the Complaint to the Policy terms, there is thus no doubt that the allegations fall within the scope of risks undertaken by the insurer under GL Coverage B.[9]

### c. Whether any exclusions bar coverage

AAIC asserts that the GL Coverage includes exclusions for "employment practices," including "sexual harassment," and for "sexual abuse," which bar coverage of the Individual Defendants' defense under the policy.  However, the false imprisonment allegations do not fit under either of the "sexual abuse" or "sexual harassment" definitions.  Notably, AAIC does not even acknowledge the Complaint's allegations of false imprisonment in its briefing.  Because the allegations in the Underlying Action cannot be cast "solely and entirely within the policy exclusions," as required under New York law, AAIC did not have a right to disclaim coverage under the policy.

---

[9] AAIC does not dispute that the Individual Defendants are alleged to have committed these acts in the coverage territory during the policy period.  *See* Compl. ¶ 13.

For these reasons, the Court finds that AAIC is required to provide the Individual Defendants with a defense in the Underlying Action pursuant to the GL Coverage.[10]

## IV. CONCLUSION

For the foregoing reasons, the Village's motion for summary judgment is GRANTED and AAIC's cross motion for summary judgment is DENIED. The Clerk of the Court is respectfully directed to terminate the motions (Docs. 27, 34) and to close this case.

It is SO ORDERED.

Dated: December 17, 2015
New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[10] The Village argues that AAIC also has a duty to defend the Individual Defendants under GL Coverage A. Because the Individual Defendants qualify for a defense under GL Coverage B, the Court does not reach this issue.